ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| MARLYN ARROYO HERNÁNDEZ, ET. AL.<br><br>Parte Apelada<br><br><br>v.<br><br><br>COOPERATIVA YABUCOOP, **ALIANZA HIPOTECARIA, INC., ET. AL.**<br><br>Parte Apelante<br><br>OM APRAISAL PARTNERS PSC., ET. AL.<br><br>Parte Apelada | KLAN202400160 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br><br>Caso Núm.:<br>J DP2014-0548<br><br><br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 8 de marzo de 2024.

Compareció ante este Tribunal la parte apelante, Alianza Hipotecaria Inc. (en adelante, "Alianza" o la "Apelante"), mediante recurso de apelación presentado el 22 de febrero de 2024. Nos solicitó la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, el "TPI"), el 12 de diciembre de 2023, notificada y archivada en autos al día siguiente. Dicho dictamen fue objeto de una "**Reconsideración**" interpuesta por Alianza, la cual fue declarada "No Ha Lugar" mediante *Resolución* emitida el 18 de enero de 2024 y notificada el 23 del mismo mes y año.

Por los fundamentos que expondremos a continuación, *modificamos* la *Sentencia Parcial* apelada y así *modificada, confirmamos* la misma.

**I.**

El caso de autos se originó el 2 de diciembre de 2014, con la presentación de una "**Demanda**" sobre daños y perjuicios por parte de la Sra. Marlyn Arroyo Hernández (en adelante, la "señora Arroyo Hernández"), el Sr. Carlos Augusto Martínez Aldebol (en adelante, el "señor Martínez Aldebol") y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los "demandantes") en contra de la Cooperativa Yabucoop (en adelante, la "Cooperativa"), el Gobierno de Puerto Rico, a través de la Oficina de Gerencia de Permisos (en adelante, "OGPe"), y varios codemandados de nombres desconocidos. En síntesis, alegaron que hubo una serie de vicios de construcción que ocasionaron la pérdida de cierta propiedad localizada en el lote núm. 14 de la urbanización Mansiones del Sur, la cual fue adquirida por éstos en el año 2001.

Expusieron que esta propiedad fue intercambiada por el desarrollador por la ubicada en el lote núm. 12, convirtiendo esta última en su residencia principal. A su vez, expresaron que no suscribieron ningún contrato de permuta respecto a dichos bienes inmuebles. Además, argumentaron que en el año 2003 solicitaron un refinanciamiento con la Cooperativa, la cual envió agrimensores, tasadores e ingenieros bajo la creencia equivocada de que la propiedad a ser financiada sería la ubicada en el predio núm. 12. Afirmaron que con el pasar de los años, la propiedad situada en el lote núm. 14 se convirtió en un estorbo público. Asimismo, alegaron que no tenían conocimiento de que Banco Popular de Puerto Rico (en adelante, "Banco Popular") había ejecutado una hipoteca sobre el lote núm. 12 y que fueron informados por una tercera persona que su casa sería subastada por dicho banco. Por último, señalaron que lograron detener la venta de la propiedad en pública subasta convenciendo a Banco Popular a que les vendiera la propiedad pero que, a pesar de ello, la Cooperativa se rehusó a asumir la responsabilidad por no haber realizado una inspección adecuada del solar núm. 14.

Oportunamente, el 2 de febrero de 2015, la Cooperativa presentó "**Contestación a Demanda**" junto a una "**Reconvención**". Expresó que el

préstamo fue otorgado en el año 2008 y negó haber contratado agrimensores e ingenieros para realizar el aludido refinanciamiento. A su vez, manifestó que: (1) los Apelados completaron diversos documentos del refinanciamiento en los que afirmaban que la propiedad a ser refinanciada era la ubicada en Mansiones del Sur núm. 12; (2) el tasador y supervisor firmaron un informe de tasación para la propiedad núm. 14; (3) los Apelados permitieron al tasador a acceder a la propiedad núm. 12, a sabiendas de que la propiedad sujeta al préstamo lo era la núm. 14; (4) los Apelados autorizaron al ingeniero a elaborar un plano de situación de la propiedad núm. 12 haciéndole creer que se trataba de la propiedad núm. 14; (5) los Apelados nunca han sido titulares de la propiedad ubicada en el solar núm. 12 y que, (6) en el 2013 los Apelados reestructuraron la deuda mediante cierta escritura de primera hipoteca. A la luz de estas alegaciones, la Cooperativa activó la cláusula de aceleración contenida en el contrato de préstamo, declarando así la deuda vencida y exigible.

Posteriormente, el 30 de marzo de 2015, los demandantes presentaron su "**Contestación a Reconvención**" mediante la cual negaron las alegaciones expuestas en su contra. Asimismo, el 25 de junio de 2015, solicitaron enmendar la "**Demanda**" para incluir como parte demandada al desarrollador del proyecto, el Dr. José V. Hernández Hernández, a su esposa, la Sra. Cristina Medina Ramos, y a la Sociedad Legal compuesta por ambos. El TPI permitió esta enmienda el 30 de junio de 2015.

Más adelante, el 30 de octubre de 2015, la Cooperativa radicó una "**Demanda Contra Terceros**" mediante la cual incluyó como terceros demandados a OM Aprisal Partners (en adelante, "OM"), Alianza, el Sr. Rafael Rivera Pagán (en adelante, el "señor Rivera Pagán"), el Sr. Omar E. Ortiz Maldonado (en adelante, el "Sr. Ortiz Maldonado"), Víctor Pagán & Associates, el Ing. Víctor F. Pagán Cordero (en adelante, el " Ing. Pagán Cordero), el Lcdo. Luis Ángel Ortiz Carrasquillo (en adelante, el Lcdo. "Ortiz Carrasquillo") y al Lcdo. David E. Vera Umpierre (en adelante, Lcdo. Vera Umpierre). En síntesis, alegó que: (1) le otorgó a los Apelados un préstamo de refinanciamiento hipotecario por la suma de $528,990.00, saldando así

un préstamo hipotecario a favor de Santander Mortgage Corporation y otro de JM Investors Group; (2) suscribió con Alianza un acuerdo de participación en el Programa de Mercadeo, Procesamiento y Cierre de Préstamos Hipotecarios con Cooperativas, con el objetivo de ofrecer préstamos hipotecarios a sus clientes, (3) el acuerdo disponía que Alianza asumiría la defensa y relevaría a la Cooperativa de la responsabilidad legal que se impusiera, como consecuencia de reclamaciones que se originaran del referido programa y por las acciones u omisiones en las que incurriera el personal que prestara los servicios; (4) en septiembre de 2013, los Apelados le solicitaron el refinanciamiento de un préstamo hipotecario ya existente; (5) utilizaron la tasación efectuada por OM y suscrita por los tasadores, los señores Rivera Pagán y Ortiz Maldonado, y que, (6) como parte del aludido refinanciamiento utilizó el "Plot Plan" realizado por Víctor Pagán & Associates y suscrito por el Ing. Pagán Cordero.

Además, indicó que el Lcdo. Ortiz Carrasquillo y el Lcdo. Vera Umpierre fueron los notarios encargados de otorgar las escrituras en controversia y que éstos no exhibieron la diligencia profesional requerida. Por último, arguyó que, debido a la falta de competencia profesional en la mensura y tasación de la propiedad, quedó desprovisto de una garantía hipotecaria que respondiera por el incumplimiento contractual de los Apelados y que, a su vez, Alianza no ha cumplido con su deber contractual de relevar y responsabilizarse por las acciones u omisiones cometidas.

Así las cosas, el 12 de enero de 2016, OM presentó su "**Contestación a Demanda Contra Tercero**" mediante la cual negó las alegaciones en su contra, argumentando que la información le fue provista por Alianza y que fueron los Apelados quienes identificaron la propiedad. Más adelante, el 21 de septiembre de 2016, el foro apelado autorizó que se incluyeran como parte demandada a Alianza, OM, Municipio Autónomo de Ponce, Banco Popular, Sr. Marcos A. Fuentes Rodríguez (en adelante, el "señor Fuentes Rodríguez") y al Ing. Ismael Caraballo Irizarry (en adelante, el "señor Caraballo Irizarry"). Dado a que Alianza se subrogó en

los derechos de la Cooperativa, el 12 de diciembre de 2016 presentó una "**Demanda Enmendada Contra Terceros**".

Posteriormente, el TPI desestimó la causa de acción contra la Cooperativa, Banco Popular, el señor Fuentes Rodríguez y el Ing. Caraballo Irizarry, al amparo de la Regla 4.3 (c) de Procedimiento Civil, 32 LPRA Ap. V. Asimismo, declaró "Ha Lugar" ciertas mociones de desestimación presentadas por los Lcdos. Ortiz Carrasquillo y Vera Umpierre. También aceptó los desistimientos, sin perjuicio, de las acciones sobre daños y perjuicios dirigidas contra OGPe, OM, el señor Rivera Pagán y el señor Ortiz Maldonado. Además, desestimó las alegaciones contra el Dr. Hernández Hernández, su esposa y la Sociedad Legal de Gananciales compuesta por ambos.

El 30 de agosto de 2023, OM presentó junto a los señores Ortiz Maldonado y Rivera Pagán (en adelante, los "Apelados") una "**Moción de Sentencia Sumaria fundamentada en la Prescripción de la Demanda de Terceros presentada en contra de Rafael E. Rivera Pagán, Omar Ortiz y OM Appraisal Partners, Inc.**" (en adelante, "Moción de Sentencia Sumaria"). Expusieron que el periodo que la Cooperativa y la Alianza tenían para interponer la causa de acción en su contra comenzó a transcurrir el 30 de julio de 2008, fecha en que Alianza recibió su tasación. Así pues, al haberse presentado la "**Demanda contra Tercero**" el 30 de octubre de 2015, la misma se encontraba prescrita. También hizo referencia a la *Sentencia* emitida por un panel hermano de este Tribunal el 18 de abril de 2018, mediante la cual se desestimó la causa de acción contra los notarios por prescripción.

Por su parte, Alianza interpuso su "**Oposición a Moción de Sentencia Sumaria**" el 20 de octubre de 2023. A través de ésta, planteó que la posición de los tasadores no puede ser igualada con la de los notarios, ya que su reclamación contra los tasadores surge de una relación contractual. En este contexto, manifestó que contrató los servicios de los tasadores para obtener una opinión sobre el valor en el mercado de la

residencia núm. 12 pero según el informe, la propiedad inspeccionada fue la núm. 14.

Tras varios trámites procesales, el 13 de noviembre de 2023, el foro primario emitió una *Resolución* mediante la cual declaró "No Ha Lugar" la *Moción de Sentencia Sumaria* debido a que los terceros demandados no invocaron en su "**Contestación a la Demanda Contra Terceros**" la defensa afirmativa de prescripción, por lo que concluyó que renunciaron a ella. Insatisfechos con esta determinación, el 30 de noviembre de 2023, los Apelados presentaron una "**Moción de Reconsideración de Resolución Denegando Moción de Sentencia Sumaria**" (en adelante, "Moción de Reconsideración").

Finalmente, el 12 de diciembre de 2023, el TPI emitió *Sentencia Parcial* mediante la cual mantuvo su determinación del 13 de noviembre de 2023, respecto a la renuncia de la defensa afirmativa de prescripción. Reiteró que los Apelados no cumplieron con la Regla 6.3 de Procedimiento Civil, *infra*, por no haber especificado las razones por las cuales afirmaban la procedencia de la defensa. Además, expresó que la defensa debía ser invocada de forma clara, expresa y específica. De igual manera, dispuso que la referida Regla no concede al foro de instancia la facultad de instruir a un demandado a cumplir con dicha Regla y que, por lo tanto, lo que procedía era declarar la renuncia a la defensa afirmativa de prescripción. No obstante, expresó que Alianza no podía interponer una acción de nivelación en contra de los Apelados porque ésta era subsidiaria y dependiente de la reclamación sobre daños y perjuicios de los demandantes, pues estaba prescrita en contra de estos últimos. Así, declaró "Con Lugar" en parte la *Moción de Reconsideración*, a los fines de desestimar, con perjuicio, la "**Demanda contra Terceros**" interpuesta por Alianza en contra de los Apelados.

Inconforme con lo anteriormente resuelto, la Apelante acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL INTERPRETAR Y**

**APLICAR DE FORMA RETROACTIVA LAS NORMATIVAS ESTABLECIDAS POR EL TRIBUNAL SUPREMO EN LOS CASOS DE <u>MALDONADO V SUAREZ</u> Y <u>FRAGUADA V HOSPITAL AUXILIO MUTUO</u> A HECHOS ACAECIDOS PREVIO AL AÑO 2012.**

**SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONSIDERAR LOS ARGUMENTOS DE <u>MALDONADO V. SUAREZ</u> Y <u>FRAGUADA V HOSPITAL AUXILIO MUTUO</u> A PESAR DE HABER DETERMINADO QUE LOS TASADORES RENUNCIARON A LA DEFENSA AFIRMATIVA DE PRESCRIPCIÓN.**

**TERCER SEÑALAMIENTO DE [ERROR:] ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINA QUE LA CAUSA DE ACCIÓN ES UNA SOBRE RESPONSABILIDAD CIVIL EXTRACONTRACTUAL Y NO CONTRACTUAL.**

El 4 de marzo de 2024, los Apelados presentaron su alegato en oposición al recurso.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

"Nuestro ordenamiento procesal no establece requisitos complicados para la redacción de una demanda. Meramente se exige que el escrito comprenda una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio". <u>León Torres v. Rivera Lebrón</u>, 204 DPR 20, 40 (2020), interpretando la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R 6.1*.* La Regla 6.2 (a) de Procedimiento Civil requiere que la parte contra quien se solicite un remedio deba presentar su alegación responsiva en la que admitirá o negará las aseveraciones en las que descansa la parte contraria y a su vez, expondrá sus defensas, respaldándolas con una relación de los hechos que demuestren su justificación. 32 LPRA Ap. V, R. 6.2 (a). Asimismo, el inciso (b) de la referida Regla dispone lo siguiente:

> En caso de que la parte que presente una alegación responsiva incumpla total o parcialmente con los requisitos impuestos en el inciso (a) de esta regla, **el tribunal, a iniciativa propia o a solicitud de parte, podrá dictar una orden para requerirle que satisfaga las exigencias de dicho inciso**. <u>Íd</u>. (énfasis suplido).

Es decir, frente al incumplimiento de una parte con las disposiciones de esta Regla, lo procedente es que el Tribunal emita una orden *motu proprio* o a solicitud de parte y le requiera a la parte demandada a cumplir con los requisitos establecidos en el aludido inciso. Así pues, entre las defensas que una parte puede alegar se encuentran las defensas afirmativas. Éstas son aseveraciones "que hace el demandado con hechos o argumentos, que de ser ciertos, derrotan el reclamo del demandante, incluso si todas las alegaciones del demandante fueran aceptadas como correctas". Conde Cruz v. Resto Rodríguez *et al.*, 205 DPR 1043, 1063 (2020). La defensas afirmativas abarcan materias de naturaleza sustantiva y/o materias constitutivas de una excusa que justifica que la parte demandada no deba responder a las reclamaciones en su contra. Presidential v. Transcaribe, 186 DPR 263, 280 (2012)**.**

En consonancia con lo anterior, la Regla 6.3 de Procedimiento Civil regula lo concerniente a las defensas afirmativas. 32 LPRA Ap. V, R. 6.3. En lo pertinente, establece lo siguiente:

> Al responder a una alegación, las siguientes defensas deberán expresarse afirmativamente:
>
> […]
>
> (q) prescripción adquisitiva o extintiva
>
> […]

Conforme a la mencionada Regla, estas defensas deben plantearse de manera clara, expresa y específica en las alegaciones. Íd. De lo contrario, se considerarán renunciadas, a no ser que la parte advenga en conocimiento de ellas durante el proceso de descubrimiento de prueba. Íd. Dicho de otro modo, de conformidad con las expresiones del Tribunal Supremo, "una característica importante de estas defensas es que se entienden renunciadas **si no se aducen al responder a una alegación, es decir, en la alegación responsiva. Por lo tanto, un demandado que <u>no</u> aduce una defensa afirmativa en la contestación a la demanda renuncia a esta y no podrá plantearla en una etapa posterior del proceso judicial**". Conde Cruz v. Resto Rodríguez *et al.*, *supra*, pág. 1064. Ahora bien, tal cual citamos anteriormente, la aludida Regla provee para

que un demandado invoque una defensa afirmativa que no planteó en la contestación a la demanda, si los hechos en que se fundamentan se conocen con posterioridad a su presentación y tras iniciado el descubrimiento de prueba. Íd.

En suma, resolvió el alto foro judicial que "las defensas afirmativas —entre ellas, la prescripción extintiva— solamente se entienden renunciadas **si no se plantean en la primera alegación responsiva**". Íd., pág. 1070 (énfasis suplido). Lo anterior está cimentado en que nuestro ordenamiento procesal promueve la presentación de defensas afirmativas en etapas tempranas del pleito, toda vez que si prosperan acarrean el potencial de disponer del pleito y evitar que las partes y el tribunal incurran en los costos que supone la prolongación innecesaria del litigio. Íd., pág. 1071.

**B.**

En nuestro Código Civil, se identifican dos clases de actos perjudiciales que resultan en responsabilidades distintas, a saber: la contractual y la extracontractual. En ambas situaciones, la indemnización de daños requiere la existencia de una conducta antijurídica causante de los daños. Ramos v. Orientalist Rattan Furnt., Inc., 130 DPR 712, 721 (1992). La responsabilidad contractual emana del "quebrantamiento de un deber que surge de un contrato expreso o implícito". Rivera Sanfeliz *et al.* v. Jta. Dir First Bank, 193 DPR 38, 56 (2015). Mediante las acciones *ex contractu*, se reclaman los perjuicios surgidos por el incumplimiento de obligaciones acordadas previamente. Íd.

Para que la responsabilidad contractual surta efecto, no es suficiente tener un contrato entre las partes, sino que se necesita "la realización de un hecho dentro de la rigurosa órbita de lo pactado y como desarrollo del contenido negocial". Maderas Tratadas v. Sun Alliance et al., 185 DPR 880, 909 (2012). Así pues, las acciones resultantes de contratos buscan asegurar el cumplimiento de promesas acordadas a las que las partes contratantes dieron su consentimiento. Santiago Nieves v. ACAA, 119 DPR 711, 716 (1987).

Por su parte, las acciones extracontractuales, conocidas como *ex delicto*, buscan indemnizar los daños derivados de la transgresión del principio básico de convivencia social, que implica no causar daños ni perjuicios a los demás. Rivera Sanfeliz *et al*. v. Jta. Dir First Bank, *supra*, pág. 57. Esto es, la culpa extracontractual no se origina de la voluntad de las partes, sino del incumplimiento de unas obligaciones impuestas por la naturaleza o por la ley. Ramos v. Orientalist Rattan Furnt., Inc., *supra*, pág. 721. La finalidad de esta acción es reparar los daños que surgen en el curso de diversas actividades humanas, al margen de toda relación jurídica previa entre el causante del daño y la víctima. Íd, pág. 720 (citando a R. de Ángel Yagüez, La Responsabilidad Civil, Bilbao, Universidad de Deusto, 1988, págs. 21–22). Es decir, a diferencia de la responsabilidad contractual, la responsabilidad extracontractual surge exclusivamente como consecuencia del daño, prescindiendo de cualquier relación jurídica previa entre las partes involucradas. Rivera Sanfeliz *et al*. v. Jta. Dir First Bank, *supra*, pág. 57.

**C.**[1]

Con el propósito esencial de promover la estabilidad social y económica de las relaciones bilaterales, nuestro ordenamiento jurídico ha instituido, mediante el Código Civil, disposiciones legales que regulan la figura de la prescripción y las formas de interrumpirla.

El Artículo 1861 regula la figura de prescripción y dispone que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". 31 LPRA sec. 5291 (derogado). A raíz de ello, nuestro máximo foro judicial ha definido la prescripción como "una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado por ley". Rivera Ruiz v. Mun. De Ponce, 196 DPR 410, 415 (2016).

---

[1] Advertimos que somos conscientes de que el Código Civil de 1930 fue derogado mediante la aprobación de la Ley Núm. 55-2020, conocida como el "Código Civil de 2020". No obstante, esta última pieza legislativa en su Artículo 1812 establece lo siguiente: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación del caso, se utilizarán las disposiciones del Código Civil derogado.

En cuanto a la prescripción extintiva, el plazo o término provisto por la ley para el ejercicio de un derecho o acción juega un rol esencial en instrumentar el interés del estado en la solución rápida de las controversias. Birriel Colón v. Supermercado Los Colobos, 213 DPR ___ (2023); 2023 TSPR 120. Por esto, el plazo dispuesto está predicado en el objetivo de (1) proteger al deudor de reclamaciones tan remotas que lo posicionen en un estado de indefensión y (2) estimular el pronto reclamo de las obligaciones legales y procurar, por tanto, la tranquilidad del obligado contra la pendencia indefinida de una acción legal en su contra. Cintrón v. E.L.A., 127 DPR 582, 588-589 (1990). La prescripción es una institución que se fundamenta "en el imperativo de castigar la inercia en el ejercicio de los derechos" para con ello, evitar litigios de difícil adjudicación por su antigüedad. Xerox Corp. v. Gómez Rodríguez y otros, 201 DPR 945, 952 (2019); Zambrana Maldonado v. E.L.A., 129 DPR 740, 751 (1992). Así es que "la prescripción extintiva está basada en una presunción 'iuris tantum' de abandono, que admite prueba en contra, la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación". Íd., pág. 752.

Como indicamos previamente, nuestro ordenamiento trata de manera distinta la responsabilidad contractual y la extracontractual. Una de las diferencias más destacadas entre ambas radica en el plazo de prescripción asignado a cada tipo de responsabilidad. Según el Código Civil aplicable a los hechos del caso, la acción por incumplimiento de contrato tiene un plazo de prescripción de quince (15) años, mientras que la acción *ex delicto* prescribe al año. 31 LPRA sec. 5294 y 31 LPRA sec. 5298, respectivamente. No obstante, cabe destacar que el plazo para ejercer las acciones extracontractuales comienza a contar desde que el perjudicado conoce que ha sufrido un daño y quién se lo causó. Ojeda v. El Vocero de P.R., 137 DPR 315, 325 (1994). Esto es lo que en nuestra jurisdicción se conoce como la teoría cognoscitiva del daño. Bajo esta teoría, basta que la persona perjudicada conozca del daño sufrido y quién se lo ha causado para que se active el término establecido en ley para ejercer la acción.

García Pérez v. Corp. Serv. Mujer, 174 DPR 138, 147-148 (2008); Vera v. Dr. Bravo, 161 DPR 308, 322 (2004).

**D.**

En nuestro ordenamiento jurídico se reconoce el derecho que ostenta todo individuo para reclamar cualquier daño o perjuicio sufrido a raíz de la consecución de actos culposos o negligentes de un tercero. Hernández Vélez v. Televicentro, 168 DPR 803, 812 (2006). Específicamente, el Artículo 1802 del derogado Código Civil de Puerto Rico dispone, en su parte pertinente, que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA sec. 5141. Es decir, la responsabilidad que emana de dicho artículo requiere que concurran tres elementos, a saber: (1) un acto culposo o negligente; (2) un daño; y (3) un nexo causal entre el daño y la conducta generadora de éste. Sucn. Mena Pamias y otros v. Jiménez Meléndez y otros, 212 DPR ___ (2023); 2023 TSPR 108; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005). De ahí que se establezca que para determinar responsabilidad civil extracontractual por actos culposos o negligentes se deba evaluar el factor previsibilidad y el riesgo inherente a la luz de las circunstancias. Pérez *et al.* v. Lares Medical *et al.*, 207 DPR 965, 976-977 (2021). Así pues, "[e]l deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible." Elba A.B.M. v. U.P.R., 125 DPR 294, 309 (1990).

Atinente a la controversia que tenemos ante nos, es menester que expongamos la norma reconocida por nuestro Tribunal Supremo en los casos de Fraguada v. Hospital Auxilio Mutuo, 186 DPR 365 (2012) y en Maldonado Rivera v. Suárez, 195 DPR 182 (2016).

En *Fraguada*, el Tribunal Supremo revocó la norma establecida en Arroyo v. Hospital La Concepción, 130 DPR 596 (1992), y su progenie y adoptó en nuestra jurisdicción la figura de la solidaridad impropia, conocida también como obligación *in solidum*, que ha sido adoptada en las jurisdicciones de Francia y España. Allí, se concluyó que "el Art. 1974 del

Código Civil no aplica a los casos de daños y perjuicios al amparo del Art. 1802 del Código Civil". Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 389.

En ese sentido, dispuso el alto foro que "el perjudicado podrá recobrar de cada cocausante demandado la totalidad de la deuda que proceda, porque los efectos primarios de la solidaridad se mantienen. Sin embargo, deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil, *supra*, si interesa conservar su causa de acción contra cada uno de ellos". Íd. En otras palabras, expuso el Tribunal Supremo que "la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación *in solidum*". Íd.

En *Maldonado*, el Tribunal Supremo reiteró la normativa reconocida en *Fraguada* y especificó que, aunque en dicho caso la controversia no giraba en torno a una demanda contra tercero sino a una enmienda a la demanda promovida por el demandante una vez había transcurrido el término prescriptivo, la prescripción como efecto secundario aplicaba de manera similar. Concluyó que "debido a que la reclamación sobre daños y perjuicios es la causa de acción principal y la acción de nivelación es subsidiaria y dependiente, si la primera no está disponible por motivo de prescripción, la segunda se torna improcedente". Maldonado Rivera v. Suárez, *supra*, pág. 208. Es decir, "[a]l prescribir la reclamación sobre daños y perjuicios a favor de un cocausante, éste queda liberado de tener que responder, pues su responsabilidad deja de ser exigible". Íd.

El alto foro fue más allá y específicamente expuso que "los cocausantes demandados tampoco pueden, mediante demanda contra tercero, presentar en su contra una acción de nivelación contingente, pues al extinguirse el derecho del perjudicado a exigir responsabilidad de ese cocausante, **cesa la obligación para los demás cocausantes de responder por la parte de aquel en el daño**". Íd., pág. 209 (énfasis

suplido). Por ello, el por ciento de responsabilidad de ese cocausante que no fue demandado dentro del término prescriptivo con conocimiento del demandante, se resta de la totalidad y el perjudicado será indemnizado por el valor monetario de la diferencia que resulte. Íd., pág. 210.

Respecto a la aplicabilidad de la aludida norma, nuestro Tribunal Supremo indicó en *Fraguada* que su efecto será prospectivo. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 393. Es decir, a partir del 13 de agosto de 2012, es necesario incluir en la demanda a todos los responsables del daño para poder interrumpir el término prescriptivo de un año. Por otra parte, es fundamental señalar que las reglas de hermenéutica que evitan que las normas afecten derechos ya adquiridos, aplican únicamente a las disposiciones de carácter sustantivo. Clases A, B y C v. PRTC, 183 DPR 666, 680 (2011). En cambio, y de manera análoga, se ha resuelto que las disposiciones estatutarias procesales tienen efecto retroactivo. Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 267 (2018). Esto implica que las normas procesales pueden influir en eventos pasados, mientras que las normas sustantivas se limitan a respetar los derechos ya establecidos.

**E.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho

sustantivo aplicable". SLG Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 167 (2011); Universal Ins. y otro v. ELA y otros, 211 DPR 455, 472 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal.

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Mejías *et al.* v. Carrasquillo *et al.*, 185 DPR 288, 299 (2012); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 911-912 (1994). Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Roldan Flores v. M. Cuebas *et al.*, 199 DPR 664, 676 (2018).

Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Roldán Flores v.

M. Cuebas *et al*., *supra*, pág. 677; Ramos Pérez v. Univisión, 178 DPR 200, 214-215 (2010).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005) (énfasis suplido).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M.

Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd*.* En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Vera v. Dr. Bravo**,** *supra*, págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**III.**

En el presente caso, Alianza nos solicita que revoquemos la *Sentencia Parcial* del TPI fundamentada en tres (3) aspectos, a saber: (1) que el foro primario erró al aplicar la normativa adoptada en Fraguada de forma retroactiva; (2) que el tribunal de instancia erró al considerar los argumentos traídos ante su consideración a base de lo resuelto en Maldonado, al tiempo en que se concluyó que los Apelados renunciaron a invocar la defensa de prescripción; y (3) que el TPI erró al concluir que la

causa de acción incoada por Alianza en contra de los Apelados era una naturaleza contractual.

Al adentrarnos a los planteamientos de derecho que la Apelante esbozó en su recurso, notamos que ninguno va dirigido a cuestionar los hechos que el TPI entendió que estaban incontrovertidos. Entiéndase, las controversias que venimos compelidos a adjudicar están cimentadas en la aplicación del derecho por parte del foro *a quo*.

Por tanto, y según hemos adelantado, al momento de revisar una determinación del foro de instancia respecto a una sentencia sumaria, estamos llamados a realizar una revisión *de novo* y limitados únicamente a adjudicar con los documentos presentados ante el foro de instancia. Sin embargo, al no estar en controversia los hechos desglosados por el TPI en la *Resolución* emitida el 13 de noviembre de 2023 que sirvieron de base para las conclusiones consignadas en la *Sentencia Parcial* apelada, acogemos los mismos como nuestros:

1. El 12 de diciembre de 2014 Marlyn Arroyo, Carlos Martínez Aldebol y la Sociedad de Bienes Gananciales presentaron Demanda en contra de Cooperativa de Yabucoa "Yabucoop" y otras partes alegando que éstos fueron negligentes en el proceso del trámite hipotecario de su propiedad, localizada en el número 14, en la Urb. Mansión del Sur, en Ponce, Puerto Rico.

2. Alianza Hipotecaria solicitó de OM Appraisal Partners, Inc., que hicieran la tasación de la propiedad número 12 de la Urb. Mansión del Sur, mediante referido enviado por fax el 17 de junio de 2008.

3. OM Appraisal Partners es una corporación organizada bajo las leyes de Puerto Rico y su principal oficial es Omar Ortiz.

4. OM Appraisal Partners refirió la tasación solicitada por Alianza Hipotecaria en el presente caso a su contratista independiente Rafael Rivera.

5. Rafael E. Rivera Pagán, visitó la propiedad número 12 en la Urb. Mansión del Sur, tomó fotos y entrevistó al demandante Carlos Martínez Aldebol para realizar la tasación solicitada por Alianza Hipotecaria.

6. Una vez concluida la inspección y la toma de fotografias de la propiedad referida por Alianza Hipotecaria a OM Appraisal Partners, Inc., ésta, bajo las firmas de Omar Ortiz y Rafael Rivera suscribieron una tasación indicando en el Informe que se trataba de la propiedad número 14 Mansión del Sur, en Ponce, Puerto Rico.

7. OM Appraisal Partners, Inc., envió la tasación de la propiedad indicando que se trataba de la propiedad número 14 de la Urb. Mansión del Sur a Alianza Hipotecaria el 31 de julio de 2008.

8. Los demandantes Marlyn Arroyo, Carlos Martinez Aldebol y la Sociedad de Bienes Gananciales no presentaron reclamación alguna en contra de Rafael Rivera, Omar Ortiz y OM Appraisal Partners, Inc., dentro del término de un año desde que éstos suscribieron la transacción.

9. El 30 de octubre de 2015, Yabucoop presentó Demanda contra Tercero en contra de Rafael Rivera, Omar Ortiz, OM Appraisal Partners, entre otros, incluyendo a Alianza Hipotecaria, alegando que los tasadores incurrieron en incompetencia profesional en la

tasación de la propiedad número 12, referida para tasación por Alianza Hipotecaria.

10. Al momento de presentarse la Demanda de Terceros por Yabucoop en contra de OM Appraisal Partners, Inc., Rafael Rivera y Omar Ortiz, habían transcurrido siete años desde la fecha en que se suscribió y entregó la tasación objeto de este litigio por Omar Ortiz, Rafael Rivera y OM Appraisal Partners, Inc. a Alianza Hipotecaria.

11. Rafael Rivera, Omar Ortiz y OM Appraisal Partners, Inc., fueron emplazados como terceros demandados en el presente caso el 18 de noviembre de 2015.

12. Alianza Hipotecaria presentó Demanda Enmendada contra Terceros el 12 de diciembre de 2016 en contra de OM Aprisal Partners, Rafael Rivera Pagán, Omar E. Ortiz Maldonado, Luis Ángel Ortiz Carrasquillo y David E. Vera Umpierre. En lo aquí pertinente, Alianza Hipotecaria le imputa una culpa y negligencia a OM Aprisal Partners, Rafael Rivera Pagán, Omar E. Ortiz Maldonado en el trámite de Tasación del 31 de julio de 2018. Alianza Hipotecaria alega que solicitó al tasador Rivera Pagán de OM Apraisal realizar la tasación de la propiedad de los demandantes.

13. Al momento de presentarse la Demanda de Terceros por Alianza Hipotecaria en contra de OM Appraisal Partners, Inc., Rafael Rivera y Omar Ortiz, habían transcurrido ocho años desde la fecha en que se suscribió y entregó la tasación objeto de este litigio por Omar Ortiz, Rafael Rivera y OM Appraisal Partners, Inc. a Alianza Hipotecaria.

14. Los demandantes Marlyn Arroyo, Carlos Martínez Aldebol y la Sociedad Legal de Gananciales compuesta por éstos no presentaron reclamación extrajudicial o judicial alguna en contra de Omar Ortiz, Rafael Rivera y OM Appraisal Partners, Inc., dentro de un año de suscrita la transacción.

15. Con anterioridad a la presentación de la Demanda de Tercero por Yabucoop / Alianza Hipotecaria en contra de Omar Ortiz y Rafael Rivera y OM Appraisal Partners, Inc., Alianza Hipotecaria, la Cooperativa de Yabucoa "Yabucoop" nunca presentaron reclamación judicial o extrajudicial alguna en contra de Rafael Rivera, Omar Ortiz o OM Appraisal Partners, Inc., alegando negligencia en el proceso de tasación de la propiedad referida por Alianza Hipotecaria y objeto de este litigio.

16. En la Demanda de Terceros presentada por Alianza Hipotecaria, Inc., en el presente caso, ésta incluyó como terceros demandados a Rafael Rivera, Omar Ortiz y OM Appraisal Partners, Inc., y al Notario que suscribió la escritura de Hipoteca en el presente caso Lcdo. David E. Vera Umpierre.

17. El 18 de abril de 2018 se dictó Sentencia Parcial en este caso desestimando por prescripción la Demanda de Tercero que presentó Yabucoop / Alianza Hipotecaria en contra del Tercero Demandado Lodo. David E. Vera Umpierre.

18. El Tribunal de Apelaciones confirmó la Sentencia de Parcial del 18 de abril de 2018 desestimando por prescripción la Demanda de Tercero de Alianza Hipotecaria, Inc., en contra del Notario Lcdo. David E. Vera Umpierre.

19. Entre la Cooperativa de Yabucoa (Yabucoop) y Alianza Hipotecaria existía un *Acuerdo de participación en programa de mercadeo, procesamiento y cierre de préstamos hipotecarios con cooperativas* (Acuerdo).

20. Como parte del Acuerdo, Alianza Hipotecaria se comprometía a tramitar y obtener los documentos y evidencia necesaria para llevar el caso a un cierre exitoso en el menor tiempo posible.

21. Como parte del Acuerdo, Alianza Hipotecaria contrataría los proveedores de servicios cualificados y aceptados por el mercado secundario, la cooperativa y ésta.

22. El 19 de marzo de 2015 Yabucoop, por conducto de su Presidente de la Junta de Directores, envió una comunicación a Alianza Hipotecaria que fue recibida por ésta el 24 de marzo de 2015 requiriendo el cumplimiento del Acuerdo. Se consignó que junto a la comunicación se acompañó copia de la Demandada que dio origen al presente caso.

Establecido lo anterior, comenzaremos por discutir el tercer señalamiento de error, ya que la disposición del mismo afecta el resultado del restante de los errores planteados. Específicamente, Alianza arguye que el TPI erró al determinar que la causa de acción es una sobre responsabilidad extracontractual y no contractual. No nos convence su postura. Nos explicamos.

Surge del expediente ante nuestra consideración que el 26 de octubre de 2000, los demandantes adquirieron mediante compraventa la propiedad núm. 14 de la Urbanización Mansiones del Sur en Ponce, Puerto Rico. Mientras habitaban la propiedad, se percataron de varias complicaciones en la estructura. Al comunicarle esta situación al desarrollador, éste les autorizó mudarse a la propiedad núm. 12 mientras se solucionaban los problemas que afectaban la propiedad núm. 14. Así las cosas, en el 2008 los demandantes decidieron obtener un préstamo hipotecario con la Cooperativa. En este momento, la Cooperativa mantenía un acuerdo con Alianza para que este último se encargara de los trámites asociados al cierre de los préstamos hipotecarios. Así pues, el 17 de junio de 2008, Alianza le solicitó a OM que realizara la tasación de la propiedad núm. 12. Siguiendo las instrucciones de OM, el señor Rivera Pagán visitó la residencia núm. 12, capturó imágenes y entrevistó a los demandantes. El 31 de julio de 2008, OM envió el Informe de la tasación firmada por el señor Rivera Pagán y el señor Ortiz Maldonado, el cual especificaba que la propiedad tasada había sido la núm. 14, en lugar de la propiedad núm. 12. A causa de estos acontecimientos, Alianza solicitó en su "**Demanda Contra Terceros Enmendada**" que los Apelados le indemnizaran **por los daños y perjuicios que podrían surgir como consecuencia de una posible declaración de nulidad del préstamo hipotecario**.

Como hemos adelantado, nuestro sistema legal le otorga un tratamiento distinto a la responsabilidad contractual y a la extracontractual. Las acciones *ex contractu* tienen como objetivo compensar los perjuicios derivados del incumplimiento de acuerdos previos, mientras que las acciones extracontractuales buscan reparar los daños que surgen en el

curso de diversas actividades humanas a causa de acciones culposas o negligentes. Rivera Sanfeliz et al. v. Jta. Dir First Bank, *supra*, pág. 56.; Ramos v. Orientalist Rattan Furnt., Inc., *supra*, pág. 720. Así pues, la acción por incumplimiento de contrato cuenta con un plazo de prescripción de quince (15) años, a diferencia de las acciones extracontractuales que prescriben al año. 31 LPRA sec. 5294 y 31 LPRA sec. 5298, respectivamente.

Tras analizar detenida y comprensivamente la "**Demanda Enmendada Contra Terceros**" presentada por Alianza, somos de la opinión que la causa de acción incoada por este último en contra de los Apelados es una de naturaleza extracontractual. Adviértase que la reclamación presentada por la Apelante surge como consecuencia de la presunta culpa y negligencia de los Apelados al efectuar una tasación sobre una propiedad incorrecta. Asimismo, Alianza específicamente reclamó lo siguiente: "Del tribunal declarar la nulidad de[l] préstamo hipotecario según solicita la parte demandante, a la compareciente le responde OM Aprisal Partners PSC, Omar Mart[í]nez Maldonado y Rafael Rivera Pagán, por todos los daños y perjuicios que sufra la compareciente a razón de dicha nulidad".[2] Es, pues, evidente que la causa de acción presentada por Alianza en contra de los Apelados era una de naturaleza extracontractual. No se cometió el error señalado.

Habiendo aclarado este asunto, nos dirigimos a analizar el primer señalamiento de error. Alianza argumenta que el foro primario erró al interpretar y aplicar, de forma retroactiva, la normativa establecida por el Tribunal Supremo en los casos de *Fraguada*.[3] Esta postura tampoco nos resulta convincente. Veamos.

Del expediente se desprenden las siguientes circunstancias, a saber: (1) los Apelados realizaron la tasación en el año 2008; (2) los demandantes interpusieron la "**Demanda**" el **2 de diciembre de 2014**, en

---

[2] *Véase*, Apéndice del recurso, pág. 112.
[3] Aclaramos que, a pesar de que en el señalamiento de error la Apelante alude al precedente sentado en el caso de *Maldonado*, nada discute sobre su supuesta aplicación retroactiva al caso que nos ocupa. Simplemente, se limita a discutir las razones por las cuales entiende que el TPI erró al aplicar la normativa de *Fraguada* en el presente pleito.

la cual no incluyeron reclamación alguna contra los Apelados y (3) el 30 de octubre de 2015, la Cooperativa presentó su "**Demanda Contra Tercero**".

Primeramente, no albergamos duda de que la norma sentada en el caso de *Fraguada* que establece que el término de prescripción debe ser interrumpido para cada cocausante del daño fue efectiva y vinculante a partir del 13 de agosto de 2012. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 389.

En otras palabras, desde esa fecha, se convirtió en un requisito *sine que non* acumular a todos los presuntos cocausantes del daño en la demanda para que se entienda interrumpido el término de prescripción de un (1) año de las acciones extracontractuales y sea posible para el demandante reclamar en contra de todos por los daños sufridos. Específicamente, el Tribunal Supremo fue enfático al concluir que "**la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación *in solidum***". Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 389. (énfasis suplido). Asimismo, *Maldonado* reiteró la norma de *Fraguada* y aclaró que las reclamaciones sobre acciones de nivelación son subsidiarias y dependientes a las acciones de daños y perjuicios. Maldonado Rivera v. Suárez, *supra*, pág. 208. Por lo que, si la primera no está disponible por prescripción, la segunda se vuelve improcedente. Íd.

Como se percibe, *Fraguada* y su progenie regulan el aspecto procesal de la acumulación de las partes en un litigio de naturaleza *ex delicto* en que alegadamente existen varios cocausantes de los daños alegados y como dicha acumulación opera para propósitos de la interrupción del término prescriptivo en contra de todos esos cocausantes. Por tanto, al ser un asunto procesal que impacta derechos sustantivos, no podemos acoger la teoría de Alianza de que lo allí resuelto es inaplicable al caso de epígrafe porque los daños reclamados ocurrieron con anterioridad a dicho precedente judicial.

Nótese que la "**Demanda**" en este caso fue presentada en el año 2014, **cuando ya el Tribunal Supremo había adoptado en nuestra jurisdicción la norma de acumulación de cocausantes de un daño en casos de naturaleza extracontractual para efectos de la interrupción del plazo prescriptivo de la acción en contra de todos**. **Entiéndase, ya para la fecha en que se inició el litigio que nos ocupa, los demandantes sabían o debían conocer la norma procesal de acumulación de partes que nuestro más alto foro acogió en *Fraguada* para propósitos de la interrupción de la prescripción de la acción contra varios cocausantes de un daño**. Por tanto, es forzoso concluir que el TPI no erró al aplicar la normativa de *Fraguada* al caso de autos, ya que en el momento en que se presentó la "**Demanda**", dicha jurisprudencia ya estaba en vigor. Más aún cuando la norma allí establecida, si bien tiene un efecto sobre el derecho sustantivo de la prescripción, no es sino una norma procesal de acumulación de partes (cocausantes de un daño) en un pleito de naturaleza extracontractual.

Finalmente, la Apelante expone que el TPI erró al considerar los argumentos de *Fraguada* y *Maldonado*, a pesar de haber determinado que los tasadores renunciaron a la defensa afirmativa de prescripción.

Antes de proceder a discutir los méritos de este señalamiento de error, debemos dejar meridianamente claro que la Apelante en ningún momento atacó u objetó en su recurso la conclusión a la que arribó el TPI, a los efectos de que la "**Demanda Enmendada Contra Terceros**" está irremediablemente prescrita. Simplemente se limitó a discutir el contrasentido de la *Sentencia Parcial*, en tanto dio por renunciada la defensa de prescripción, aunque desestimó la causa de acción incoada en contra de los Apelados por prescripción al entender que no subsiste una causa de acción por nivelación. Es decir, coincidimos con los Apelados a los efectos de que la prescripción de la causa de acción de los demandantes en contra de éstos es un asunto adjudicado por el TPI en la *Sentencia Parcial* apelada y Alianza no refutó dicha conclusión en su recurso.

No olvidemos que, en cuanto al contenido del escrito de las apelaciones de casos civiles, la Regla 16 de nuestro Reglamento requiere que del cuerpo del escrito se desprendan los señalamientos breves y concisos de los errores que a juicio de la parte apelante cometió el Tribunal de Primera Instancia y una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicable. 4 LPRA Ap. XXII-B, RR. 16(C) (E) y (F).

Lo anterior, debido a que los errores no discutidos en un recurso se entienden renunciados y no serán considerados por los tribunales revisores. Pueblo v. Miró González, 133 DPR 839, 857 (1993). Así se ha pautado jurisprudencialmente que:

> La exigencia de que el escrito de apelación contenga un señalamiento de error y una discusión del mismo no es un mero preciosismo inconsecuente. **Es en la discusión del error donde se enmarca la actuación alegadamente errónea del foro primario cuya revocación se ha solicitado, a la luz de los hechos y del derecho aplicable**. Es lo que se ha denominado "el corazón" de la apelación o "la artillería pesada". No podemos olvidar que el derecho, particularmente el derecho o práctica apelativa, es rogado. Morán v. Martí, 165 DPR 356, 369 (2005) (énfasis suplido).

Así pues, es evidente que en materia de derecho apelativo las partes no deben menospreciar la exigencia de que los señalamientos de error en una apelación sean discutidos de manera apropiada, pues el resultado de ello es que se deben entender por renunciados y limitando nuestra labor revisora al no encontrarnos en posición de atender los reclamos presentados por la parte.

Establecido lo anterior, el expediente del caso ante nuestra consideración refleja que los Apelados incluyeron en su "**Contestación a Demanda Contra Tercero Enmendada**" la defensa afirmativa de prescripción. En específico, indicaron lo siguiente:

[…]

1. La demanda contra terceros enmendada así como la deuda original **podrían estar parcial o totalmente prescrita** y es improcedente en derecho.[4]

[…]

---

[4] *Véase*, Apéndice del recurso, pág. 115 (énfasis suplido).

Es norma reiterada en nuestra jurisdicción que la parte responsable de presentar una alegación responsiva debe reconocer o negar las aseveraciones de la parte contraria, al mismo tiempo que exponer sus defensas respaldándolas con una relación de hechos demostrativos. 32 LPRA Ap. V, R. 6.2 (a). El inciso (b) de la referida Regla nos detalla el remedio disponible cuando una parte no incluye los hechos demostrativos que respaldan su defensa. 32 LPRA Ap. V, R. 6.2 (b). Esto es, "el tribunal a iniciativa propia o a solicitud de parte, **podrá dictar una orden para requerirle que satisfaga las exigencias de dicho inciso**". Íd. (énfasis suplido). Por otra parte, la Regla 6.3 de Procedimiento Civil, *supra*, nos provee una lista de las defensas afirmativas que una parte puede añadir en su alegación responsiva, incluyendo entre ellas la defensa de prescripción. 32 LPRA Ap. V, R. 6.3. Dicha Regla establece que las defensas deben ser expresadas de manera **clara, precisa y específica al contestar una alegación, puesto que, de lo contrario, se considerarán renunciadas**. Íd. **La defensa afirmativa de prescripción solo se entenderá renunciada <u>si no fue planteada en la primera alegación responsiva</u>, siendo este el único escenario en el cual se considerará renunciada**. <u>Conde Cruz v. Resto Rodríguez et al.</u>, *supra*, pág. 1047.

De una mera lectura de las citadas Reglas en unión con la jurisprudencia interpretativa de las mismas, se desprende que cuando una parte **<u>omite</u>** incorporar la relación de hechos que respalda la defensa afirmativa de prescripción, lo que corresponde es que el Tribunal emita una orden para que se enmiende o suplemente la contestación a la demanda con referencia a los hechos en los que se fundamenta la defensa. Distinto a lo dispuesto en la Regla 6.3 de Procedimiento Civil, *supra*, que dispone que se entenderá renunciada una defensa afirmativa si la misma no se expresa de manera clara, precisa y específica.

Si bien es claro el paralelismo de ambas Reglas, pues regulan la acumulación de defensas en la primera alegación responsiva, no es menos cierto que su alcance y sus respectivos incumplimientos acarrean distintos efectos. La Regla 6.2 (a) de Procedimiento Civil, *supra*, requiere que las

alegaciones y defensas que un demandado invoque en su contestación a la demanda estén basadas en los hechos que los sustentan. Así pues, el remedio que la Regla 6.2 (b) de Procedimiento Civil, *supra*, provee en casos de incumplimiento con ello lo **es la enmienda a la alegación responsiva y <u>no</u> la renuncia a la defensa afirmativa**. La renuncia a una defensa afirmativa, como lo es la prescripción, **únicamente opera cuando se deja de plantear en la alegación responsiva de forma clara, inequívoca y específica**. El análisis del lenguaje citado e incorporado a la "**Contestación a Demanda Contra Tercero Enmendada**" pone de manifiesto que los Apelados cumplieron con alegar la defensa afirmativa de prescripción de forma clara, inequívoca y específica. Entiéndase, para propósitos de los demandantes y de Alianza no debía existir duda alguna de que los Apelados invocaron dicha defensa en su primera alegación responsiva, pues se cumplió con los únicos requisitos que exige la Regla: que se alegue de forma clara, inequívoca y específica. Por tanto, estamos impedidos de validar la conclusión de que la misma se diera por renunciada.

Al examinar las expresiones del TPI en la *Sentencia Parcial*, notamos que en la adjudicación de la controversia de la renuncia de la defensa de prescripción se entremezclaron los aspectos regulados por la Regla 6.2 (a) y (b) de Procedimiento Civil, *supra*, y los efectos de no invocar una defensa afirmativa, conforme la Regla 6.3 de dicho cuerpo reglamentario. Según lo intimado por Alianza ante el TPI y acogido por dicho foro, se debía entender renunciada la defensa de prescripción por no haber aludido a los hechos en lo que basaba la misma. La renuncia **no** es el resultado que persiguen los incisos (a) y (b) de la Regla 6.2 de Procedimiento Civil, *supra*. **Dicho efecto ocurre sólo cuando la defensa se deja de alegar en la alegación responsiva, a la luz de la Regla 6.3 de Procedimiento Civil, *supra*.** Eso no fue lo que ocurrió en el presente caso. Los Apelados sí alegaron la defensa de prescripción en tiempo; ahora bien, si el argumento era que estaba mal alegada, lejos de entenderla renunciada lo que correspondía era ordenar la enmienda a la alegación

responsiva para que se hiciera alusión a los hechos en que se basaban los Apelados para invocarla.

Por todo lo antes expuesto, concluimos que el foro primario erró al determinar que los Apelados renunciaron a la defensa afirmativa de prescripción. La medida adecuada debió haber sido ordenar la enmienda de la alegación correspondiente, sin embargo, dado a la conclusión de que la acción en contra de los Apelados está prescrita, dicho remedio es improcedente en derecho por haberse tornado académico.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *modificamos* la *Sentencia Parcial* a los fines de establecer que la defensa afirmativa de prescripción no fue renunciada y así *modificada*, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones